**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**IN RE SMARTALK TELESERVICES, INC.
SECURITIES LITIGATION**

|  |  |
|---|---|
| **This document relates to:** | **Case No. 00-MD-1315** |
| **USDC Northern District of Texas Case** | **JUDGE EDMUND A. SARGUS, JR.** |
| **No. 3:00-CV-2671-M (Liquidating Trustee)** | **Magistrate Judge Terence P. Kemp** |

<u>**OPINION AND ORDER #1**</u>

This matter is before the Court for consideration of the Motion of Defendant

PricewaterhouseCoopers, LLP for Summary Judgment on the Ground of Res Judicata (Doc.

#291). For the reasons that follow, the motion is denied.

**I.**

SmarTalk Teleservices, Inc. ["SmarTalk"] was formed in 1994 to sell prepaid phone

cards to the public through retailers and distributors. SmarTalk grew rapidly, mostly through

acquisitions, and became one of the largest providers of prepaid telecommunications products

and services in North America. In August and October 1998, SmarTalk announced that its

financial statements for the third quarter of 1997 through the second quarter of 1998 contained

material overstatements as to the company's previously reported revenues. In January 1999,

SmarTalk announced that its third quarter 1998 financial statements were overstated.

SmarTalk's revenues for 1997, reported as $32 million, were overstated by $8.3 million. The

company's net income, reported as $2.7 million, was actually a loss of over $7 million.

Cumulative revenues for the first quarters of 1998, reported as over $151 million, were

overstated by $15.7 million. In addition, cumulative losses from continuing operations, reported as almost $23 million, were understated by over $45 million. Net losses for the same period, reported as $23.7 million, were understated by over $49 million. *See In re SmarTalk Teleservices, Inc.*, 124 F.Supp.2d 527, 531-32 (S.D. Ohio 2000).

Stockholders who had acquired SmarTalk stock during the foregoing time but before the restated earnings periods filed suit alleging, *inter alia*, that the SmarTalk officers and directors presented a false picture of the company's financial well-being in various public statements. Plaintiffs acquired SmarTalk stock either on the open market (the "Class Plaintiffs") or as consideration for SmarTalk's acquisitions of specific companies (the "WorldWide Direct Plaintiffs" and the "SmarTel Plaintiffs"). According to Plaintiffs, the value of SmarTalk stock was inflated to allow SmarTalk to use its stock in acquiring other companies. The Plaintiffs also claimed that individuals associated with the company sold their personal holdings at an inflated price. In addition to suing the SmarTalk officers, directors and partners, Plaintiffs also filed suit against SmarTalk's accountant, PricewaterhouseCoopers, LLC ["PwC"], alleging violations of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), negligent misrepresentation, and fraud.

On January 19, 1999, SmarTalk, together with eighteen direct and indirect SmarTalk subsidiaries[1], filed petitions under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §

---

[1] These subsidiaries consist of the following: SmarTalk USPS Sales Co., GTI TeleCom, Inc., USA Telecommunications Services, Inc., SmarTel Communications, Inc., SMTK NY-1 Corp., Creative Network Marketing, Inc., SmarTalk (Delaware) Corp., SMTK Acquisition Corp., Conquest Telecommunication Services Corp., SMTK Acquisition Corp. III, SmarTalk Acquisition Corp., Conquest Communications Corp., Conquest Long Distance Corp., Conquest Operator Services Corp., SmarTel, Inc., SmarTel International, Inc., SmarTel Communications of Virginia, Inc., and Conquest Operator Services, LP.

101, *et seq*, in the United States Bankruptcy Court for the District of Delaware. On February 2,

1999, the Committee of Creditors was formed. On May 4, 2000, the Committee filed a

Disclosure Statement which was approved by the Bankruptcy Court on May 13, 2000. On June

7, 2001, the Bankruptcy Court entered the Confirmation Order and, on July 23, 2001, the Trustee

filed a Notice of Effective Date, thereby terminating the bankruptcy.

With respect to the instant MDL action, on November 1, 2000, this Court addressed

PwC's Motions to Dismiss the various complaints filed against it. Several claims survived and

motions for summary judgment have been filed. The Court now considers the first of the

dispositive motions filed by PwC and related to the Liquidating Trustee.

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed.

R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v.*

*Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a

material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is appropriate however, if the opposing party fails to make a showing

sufficient to establish the existence of an element essential to that party's case and on which that

3

party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III.

The parties agree that there are no material facts in dispute with respect to the res judicata

4

issue raised by Defendant PwC. Rather, the parties' arguments pertain to a question of law -- the effect of the SmarTalk Chapter 11 Reorganization Plan on the pending claims.

According to PwC, the Reorganization Plan reserved only one claim of the bankruptcy estates, the "Fletcher Adversary," a proceeding brought by the debtors as to the claims of Fletcher International Ltd.. (*Motion for Summary Judgment* at 2, n.1). It is undisputed that the Fletcher Adversary has no relation to the issues at bar.

In addition to its specific reference to the Fletcher Adversary, the SmarTalk Reorganization Plan contains the following provision, which states:

> **Retention of Actions and Defenses**. All claims, rights, defenses, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estates within the meaning of section 541 of the Bankruptcy Code (including without limitation the Fletcher Adversary), as well as all claims, rights, defenses, offsets, recoupments, and causes of action arising under Chapter 5 of the Bankruptcy Code (including without limitation the Avoidance Actions) with respect to the Debtors, shall be and are hereby preserved for the benefit of the holders of Allowed Unsecured Claims and other beneficiaries of the Liquidating Trust, and shall be and hereby are deemed to be part of the Remaining Assets and transferred and assigned to the Liquidating Trust as of the Effective Date. Except as otherwise set forth in Sections 7.1 and 10.1.2 of this Plan, prosecution and settlement of such claims, rights, defenses, and causes of action shall be the sole responsibility of the Liquidating Trustee, pursuant to the provisions of the Liquidating Trust Agreement, and the Liquidating Trustee shall pursue those claims, rights, defenses, and causes of action, as appropriate, in accordance with what is in the best interests, and for the benefit of, the beneficiaries of the Liquidating Trust; provided, however, that nothing in this Plan is intended to or does confer upon the Liquidating Trustee standing to pursue claims or causes of action that do not constitute property of the Estates.

(Second Amended Consolidated Liquidating Ch. 11 Plan at § 15.2, attached as Exhibit 2 to *Declaration of Lori Lynn Phillips* in support of *PwC's Motion for Summary Judgment*) (emphasis in original).

5

PwC argues that this provision prohibits the action brought by Plaintiffs. PwC contends that the claims are barred by the doctrine of res judicata, since the Confirmation Order did not reserve to the Plaintiffs the right to pursue claims against PwC. The Liquidating Trustee disagrees with PwC's argument for several reasons. First, the Trustee points out that PwC has never presented the defense of res judicata in its pleadings. Second, the Trustee contends that PwC failed to object to the substitution of the Trustee for the original plaintiff, the Official Committee of Unsecured Creditors. Third, the Trustee argues that application of the res judicata doctrine is not appropriate, because the claims against PwC were fully disclosed in the approved bankruptcy Disclosure Statement relating to the Plan and because the Plan itself provides for the preservation of all claims belonging to the SmarTalk estates and the transfer of those claims to the Liquidating Trust.[2]

---

[2]The Court notes that the Trustee filed a Motion with the Bankruptcy Court requesting Clarification and Enforcement of the Confirmation Order. In particular, the Trustee requested a determination as to whether the accounting malpractice claims pending in this Court were preserved under the terms of the Plan and were transferred to the Liquidating Trustee by virtue of the Confirmation Order. After hearing argument on the issue, the Bankruptcy Judge ruled that the matter was not for him to decide, but rather, must be decided by this Court. Accordingly, the Bankruptcy Judge denied the Trustee's Motion to Clarify and Enforce the Confirmation Plan in an Order dated April 28, 2003. In view of this decision, the Trustee's Motion in this court to Abate Consideration of and Further Proceedings on Defendant PwC's Motion for Summary Judgment on the issue of res judicata (Doc. #319) is rendered MOOT.

The Trustee has also filed two pleadings entitled "Request for Suggestion of Remand" of this action to the United States District Court for the Northern District of Texas (Doc. # 353 and #431) as well as a request for oral argument on the same (Doc. #443). The basis for the request for remand is a purported conservation of judicial resources in the event that this MDL action is transferred to the Northern District of Texas. In the Court's view, this request ignores the decision of the Judicial Panel on Multidistrict Litigation to transfer cases to this Court. Thus, the requests for suggestion of remand and request for oral argument are rendered MOOT.

**IV.**

The Court first considers the Trustee's arguments that PwC has either waived or is estopped from raising the issue of res judicata. Fed. R. Civ. P. 8(c) provides that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively . . . res judicata . . . and any other matter constituting an avoidance or affirmative defense." The United States Court of Appeals for the Sixth Circuit has stated that the "purpose of res judicata is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Westwood Chemical Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981) (citations omitted). Further, as Rule 8(c) provides, the defense of res judicata must ordinarily be presented in the first instance in the pleadings. The Sixth Circuit holds, however, that "res judicata can also be raised by motion." *Id.* In *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439 (6th Cir. 1993), the court held that the defense of res judicata may even be raised for the first time during the course of summary judgment proceedings. In support of this holding, the Sixth Circuit relied on, *inter alia*, a decision of the Third Circuit finding that "a defendant does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time and the [plaintiff] was not prejudiced in its ability to respond." *Charpentier v. Godsil*, 937 F.2d 859, 864 (3rd Cir. 1991).

In this case, PwC raised the issue of res judicata for the first time in its present Motion for Summary Judgment, which was filed on February 14, 2003. The Confirmation Plan, on which PwC bases its argument that res judicata applies, was entered on June 7, 2001. This was after PwC answered the Complaint. The Confirmation Plan was also entered after this Court had considered the PwC's Motions to Dismiss the claims raised against them. Thus, it was not

7

possible for PwC to assert the defense of res judicata in its earlier motions. While PwC could have amended its Answer to include the defense once the Confirmation Plan took effect, the Court finds that the Plaintiff Trustee has not been prejudiced by PwC's decision to wait and raise the defense in the context of the present Motion for Summary Judgment. Consequently, to the extent the Trustee asserts that PwC has waived its ability to maintain the defense, the argument is without merit.

The Trustee also asserts that PwC is collaterally estopped from pursuing the res judicata defense because PwC allegedly failed to object to the Motion to Substitute the Liquidating Trustee as Plaintiff in the place of the Official Committee of Unsecured Creditors. The Trustee states that the motion to substitute "was premised on the Trustee's position that the Confirmation Order and Plan had preserved the Accounting Malpractice Claims and had provided for the transfer of those claims to the Liquidating Trust." (*Memorandum contra* at 12). The Trustee argues that in granting the Motion to Substitute, this Court has already decided that the Committee's claims were preserved under the Confirmation Plan.

In the Court's view, the Plaintiff misconstrues nature of the Court's decision on the Motion to Substitute. The decision simply addressed the entity which would pursue the claims raised against PwC. The decision did not address the merits of those claims. Furthermore, as PwC points out, the Plaintiff's position does not satisfy the elements necessary to apply the doctrine of collateral estoppel.

Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v.*

8

*United States*, 440 U.S. 147, 153 (1979). The doctrine applies when the following elements are satisfied: (1) the issue in subsequent litigation is identical to that resolved in the earlier litigation; (2) the issue was actually litigated and decided in the prior action; (3) the issue was necessary and essential to a judgment on the merits in the prior action; and (4) the party to be estopped was a party to the prior action or in privity with the party. *Hickman v. Commissioner of Internal Revenue*, 183 F.3d 535, 537 (6th Cir. 1999) (citations omitted).

These elements are not satisfied in this instance. As noted, the earlier decision on the Motion to Substitute did not address the merits of the claims that are being pursued by the Plaintiff Trustee. Thus, there is no basis for the application of collateral estoppel. Having resolved the issues of waiver and estoppel, the Court now considers whether the res judicata defense applies to the claims asserted against PwC. As a preliminary matter, the Court finds that the substantive law of the Sixth Circuit governs the issue. In multidistrict litigation, "[w]hen analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located." *Temporomandibular Joint (TMJ) Implant Recipients v. E.I. DuPont DeNemours & Co.*, 97 F.3d 1050, 1055 (8th Cir. 1996).

In the Sixth Circuit, a claim is barred by the doctrine of res judicata if all of the following elements are present: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies;' (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997).

PwC argues that each of these elements are satisfied. In support of this position, PwC

9

relies on *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002). The case arose out of a dispute between the Trustees of the Employee Stock Ownership Plan ["ESOP"] of Nationwise Automotive, Inc. and Saul Levy, the majority shareholder of Nationwise. Levy and the Trustees could not agree on a method to remedy Nationwise's financial difficulties. The Trustees and the Nationwise Board of Directors proposed a plan to call Levy's shares under a Subscription Agreement pursuant to which Levy became the majority shareholder. Levy was unable to pay the purchase price of the shares demanded that the Board of Directors considered ESOP to have voting control of Nationwise. Levy and the Board then became involved in a dispute and Nationwise sued Levy in state court alleging fraud in connection with the stock Subscription Agreement. The parties ultimately entered into a settlement agreement and, three years later, Nationwise filed for Chapter 11 protection. Five days after the bankruptcy filing, certain employees and participants in the ESOP sued Levy in federal court alleging that the settlement of the state court action was procured by fraud. Levy's lawyers in the state court action, Squire Sanders & Dempsey ["SSD"] were also sued on a theory that, in procuring the settlement, the lawyers breached fiduciary duties under ERISA, 29 U.S.C. §§ 1001-1461, and committed legal malpractice and other breaches of duty under Ohio law.

In the bankruptcy proceeding, the ESOP was represented by Star Bank Financial Services, as the Trustee of the ESOP and representative of the minority shareholders. The Plan contained the following reservation of rights provision:

> In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under sections 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code.

10

*Id.* at 769. Approximately one year after the Plan was confirmed, Levy's lawyers filed for summary judgment in the federal court action on all claims pending against them. The district court granted the motion, holding that the ESOP's claims against Levy's attorneys were barred by res judicata in light of the Bankruptcy Court's confirmation of the Plan. The matter was then appealed to the Sixth Circuit, which affirmed the decision of the district court.

In its decision, the Sixth Circuit first recognized that, "[a]s a general rule, the 'confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings.'" *Id.* at 772, quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). "Such confirmation by a bankruptcy court 'has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.'" *Id.*, quoting *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir. 1991).

The court next concluded that SSD was a party to the bankruptcy proceedings so as to satisfy the element of "identity of parties" under the res judicata doctrine. Nationwise was first represented in the bankruptcy proceedings by SSD, although another firm later replaced them as counsel. The Sixth Circuit held, however, that SSD was a party to the proceedings because they initially proceeded "on behalf of the debtor . . . [and] remained as special counsel throughout the proceeding." *Id.* at 771. Next, the Sixth Circuit held that the claims against SSD should have been raised in the bankruptcy proceeding under that court's limited jurisdiction over non-core proceedings under 28 U.S.C. § 157(c)(1). *Id.* at 773. The court found that res judicata applied to non-core claims. *Id.*

The Sixth Circuit further found that the claims against SSD were related to the

11

bankruptcy proceeding because "if they had been brought during the proceeding, any recovery received by [Nationwise] would have represented an asset, available for distribution to Nationwise's creditors and shareholders." *Id.*, citing *In re Micro-Time Mgmt. Sys., Inc.*, Nos. 9102260, 91-2261, 1993 WL 7524, at *4 (6th Cir. Jan. 12, 1993). Finally, the Sixth Circuit held that there was an identity of claims between the bankruptcy proceedings and those alleged against SSD since "SSD's representation of Levy in connection with the 1991 and 1992 dispute over the control of Nationwise and the resulting litigation and settlement contributed to Nationwise's bankruptcy . . . ." *Id.* at 774. Accordingly, the court concluded that all of the elements of res judicata were satisfied.

The Sixth Circuit also considered the issue of whether the reservation of rights in the Confirmation Plan operated to avoid the effect of res judicata. The court concluded that it did not. The Sixth Circuit stated:

> NW's blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of NW's claims to be taken into account in the disposition of the debtor's estate. Significantly, it neither names SSD nor states the factual basis for the reserved claims. We therefore conclude that NW's blanket reservation does not defeat the application of res judicata to its claims against SSD.

*Browning*, 283 F.3d at 775.

PwC argues that the same result applies in this case. First, PwC argues that the Confirmation Plan is a final judgment in a bankruptcy proceeding. Second, PwC argues that there is an identity of parties, because Plaintiff became vested with all the remaining assets of the bankruptcy estates on the effective date of the confirmed reorganization plan. Third, PwC argues that the instant action is related to the bankruptcy proceeding, since the outcome would have had

12

an effect on the estate being administered in the bankruptcy. Fourth, PwC argues that there is an

identity of causes of action because the claim Plaintiff's claims against PwC "concern events

that allegedly contributed to the filing of the SmarTalk bankruptcy . . . ." (*Motion for Summary*

*Judgment* at 11). Finally, PwC asserts that, under the authority of *Browning, supra*, the general

reservation of claims contained in the Confirmation Plan is ineffective to avoid the application of

res judicata.

In response, the Plaintiff Trustee argues that the Disclosure Statement presented to the

Bankruptcy Court specifically identifies the malpractice claims against PwC and is sufficient to

avoid any res judicata effect of the Confirmation Plan. The Disclosure Statement, dated April

27, 2000, proposed by the Debtors and Official Committee of Unsecured Creditors, provides:

> ### III. The Bankruptcy Cases and Other Issues Relevant to Consideration of the Plan
>
>    \*      \*      \*
>
> ### C. Cash On Hand; Remaining Assets and Causes of Action
>
>    \*      \*      \*
>
> ### 2. Claims By and Against PwC.
>
>   Pursuant to the Bankruptcy Code's "Order Granting Motion of the Official Committee of Unsecured Creditors regarding Transfer of Authority to Pursue Certain Claims and Causes of Action" (the "<u>Transfer Order</u>"), the Committee is investigating whether any meritorious claims exist against PwC with respect to the restatement of the Debtors' financial statements and other matters.
>
>   [T]he Debtors engaged PwC to provide an independent annual audit of their financial statements for the fiscal year ending on December 31, 1997. As part of its agreement with the Debtors, PwC agreed, among other things, to conduct an examination of the Debtors' financial statements and to prepare a management letter regarding any significant items which came to PwC's attention, including any significant deficiencies in internal accounting controls.
>
>   The Committee is investigating causes of action against PwC for, among other things, professional negligence, negligent misrepresentation and breach of contract arising from the engagement. The investigation to date indicates that in August 1998 PwC notified the Debtors of significant accounting issues that

ultimately resulted in a restatement of their prior year financial statements and of their first and second quarter 1998 reports, including but not limited to the following items: revenue associated with the "deferred revenue" recorded for certain companies acquired by SMTK; a restructuring expense reserve recorded in connection with termination of operations associated with various acquisitions; over-allocation of the purchase price for companies acquired in 1997 to intangible assets rather than goodwill; and a write-off of "in process research and development" costs and various other adjustments. The Committee is investigating whether PwC knew or should have known of such issues in advance of August 1998, and whether PwC was negligent and breached its agreement with the Debtors by failing to apply and follow appropriate accounting and auditing standards and by failing to discover and disclose the accounting issues prior to August 1998, as well as related matters.

While the investigation to date supports the assertion of substantial claims against PwC, given the inherent uncertainties in any litigation, no assurance can be given regarding the successful outcome of any litigation which may be initiated against PwC. Litigation of the magnitude which may be initiated against PwC is by its very nature lengthy, difficult, expensive, and, most importantly, uncertain in nature. There can be no assurance given that a recovery against PwC, if any, would be material, or that PwC would have sufficient financial resources to satisfy any such recovery.

Moreover, PwC has filed proofs of Claim against the Debtors in an aggregate amount of more than $1,250,000, asserting Claims for, among other things, the Debtors' alleged obligations regarding payment for services previously rendered by PwC. . . . While the Committee disputes and objects to those Claims in their entirety, it is possible that any affirmative recovery obtained by the Estates against PwC could be offset by the amounts asserted in those proofs of Claim or by counterclaims asserted by PwC in litigation commenced on behalf of the Estates.

(Exhibit 3 attached to *Declaration of Lori Lynn Phillips* in support of *PwC's Motion for Summary Judgment*).

As stated in *In the Matter of Georgetown of Kettering*, 17 B.R. 73, 75 (S.D. Ohio 1981), "[t]he function of the disclosure statement is to place upon the Debtor the responsibility of providing adequate information as determined by the Court before soliciting approval of a Proposed Plan of Reorganization." In other words, the Disclosure Statement serves the purpose of giving creditors information necessary to decide whether to accept the plan. *In re Dakota Rail, Inc.*, 104 B.R. 138, 141 (D. Minn. 1989).

14

The effect of identification of claims in a Disclosure Statement was addressed in the decision of *In re Crowley, Milner and Company*, 299 B.R. 830, 833 (E.D. Mich. 2003). There, the Chapter 11 Liquidation Plan contained a general reservation of rights provision authorizing the creditors' committee to pursue any of the debtors' "claims or causes of action against any person." The more detailed Disclosure Statement contained the following provision:

> **3. Rights of Action.** On and after the Confirmation Date, each Debtor and its Committee will retain and have the exclusive right to enforce any and all present or future rights, claims or causes of action against any person and rights of the Debtors that arose before or after the Commencement Date, including, but not limited to, rights, claims (including claims against officers and directors), causes of action, avoiding powers, suits and proceedings arising under sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code. Each Debtor and its Committee may pursue, abandon, settle or release any or all such rights of action, as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court. Each Debtor may, in its discretion (in consultation with its Committee), offset any such claim held against a person against any payment due such person under the Plan; provided, however, that any claims of each Debtor arising before the Commencement Date shall first be offset against Claims against such Debtors arising before the Commencement Date.

*Id.* at 848.

Following confirmation of the Plan, the committee filed suit against the president and chief executive officer of the insolvent company claiming breach of fiduciary duty owed to the debtors. The Defendants moved to dismiss the complaint for various reasons, including the contention that the claims are barred by the doctrine of *res judicata*. With respect to this argument, the court observed that the language in the Disclosure Statement, purporting to reserve claims against directors and officers, was not stated in the confirmation plan. The court observed that the Disclosure Statement provided that the terms of the Plan itself overrode any inconsistent language in the Disclosure Statement. *Id.* at 848. The court further noted that "[e]ven absent the

15

. . . language . . . logic dictates that the reservation of rights in the Amended Plan and the Order Confirming Plan would trump any inconsistency in the Amended Disclosure Statement and be the operative provision because the Order Confirming Plan is itself the final judgment that creates the res judicata effect." *Id.* at 849.

In considering the efficacy of the reservation of rights provision contained in the Plan, the court turned to the Sixth Circuit's decision in *Browning v. Levy, supra.* The court found that the general reservation of rights provision contained in the Plan was "virtually identical to the reservation in the *Browning* case." *Id.* The court concluded that, because the Plan did not contain a description of the specific causes of action against officers and directors, the purported reservation of rights provision was ineffective to defeat the application of res judicata. In so holding, the court stated that its ruling "both furthers the policy of complete disclosure, which is the cornerstone of the Bankruptcy Code, and promotes the finality of confirmation orders which thereby increases certainty, discourages multiple litigation, and conserves judicial resources." *Id.* at 852, citing *Browning*, 283 F.3d at 774-75.

Similarly, other courts have concluded that a general reservation of rights provision in a confirmed Plan is insufficient to preserve claims post-confirmation. In *D & K Properties Crystal Lake v. Mutual Life Ins. Co. of New York*, 112 F.3d 257 (7th Cir. 1997), the Seventh Circuit followed the holding of the Sixth Circuit in *In re Micro-Time Mgmt. Sys., Inc.*, Nos. 9102260, 91-2261, 1993 WL 7524, at *4 (6th Cir. Jan. 12, 1993), in finding that "the claim sought to be reserved was not identified in the reservation. The identification must not only be express, but also the claim must be specific. A blanket reservation that seeks to reserve all causes of action reserves nothing." 112 F.3d at 261. *Accord In re American Preferred Prescription, Inc. v.*

*Silverman*, 266 B.R. 273 (E.D. N.Y. 2000)[3].

In *In re Kelly*, 199 B.R. 698 (9th Cir. BAP 1996), the court considered a set of facts more similar to the case at bar.  The Kelleys were sole shareholders of Hawkeye Enterprises, Inc.  They issued a written guaranty, secured by a deed of trust on their residence, in favor of South Bay Bank.  The guaranty was to insure payment and performance of all obligations owed by Hawkeye to the Bank.  The Bank loaned the Kelleys $42,000 secured by an interest in Hawkeye's accounts receivable, contract rights, equipment, furniture, fixtures and vehicles.  The Kelleys eventually filed a petition for bankruptcy under Chapter 11.  The Bank filed a proof of claim based upon the guaranty and then sought to foreclose on the deed of trust on the Kelleys' residence.  The Kelleys avoided this by working out a repayment schedule with the Bank in exchange for the Bank agreeing to vote for the Plan and relinquish its security interest in Hawkeye's personal property at confirmation.  The bankruptcy court confirmed a Plan of Reorganization.  The confirmed Plan stated, in part, that the Kelleys reserved the right to initiate an adversary proceeding within 30 days of confirmation to contest any claim:

> Except as otherwise ordered by the Bankruptcy Court pursuant to Section 4.3 below, the terms and conditions of the security interests of South Bay Bank shall remain unaltered by this Plan.

---

[3]This Court notes that other courts have held to the contrary.  In *In re USN Communications, Inc.*, 280 B.R. 573 (D. Del. 2002), the court held that a subsequent action is not barred by a prior confirmation plan containing only a general reservation of rights to pursue certain claims post-confirmation.  The claims at issue in *In re USN Communications, Inc.* were brought by the Trustee to recover alleged preferential payments that the debtor corporation had made to a consulting firm.  The reservation of claims provision contained in the confirmation plan preserved the right to all "avoidance powers" granted the debtor under the bankruptcy code.  The court found this provision sufficient to "preserve the right to pursue and enforce preference actions for the Trustee. . . ."  *In re USN Communications, Inc.*, 280 B.R. at 592.  The same result was reached in *In re Amspace Corp.*, 279 B.R. 145 (D. Del. 2002), which also involved alleged preferential transfer claims.  This Court notes that such claims are wholly dissimilar from the types of claims asserted against PwC in this case.  The decisions are also contrary to the Sixth Circuit's decision in *Browning*.

17

> Section 4.3(b) of the Confirmed Plan states:
> Within thirty (30) days of the date of the Plan Confirmation, the Debtors shall
> initiate adversary proceedings to contest the amount, allowability, priority and/or
> secured status of any claims which the Debtors believe are not proper. The
> Debtors may at the same time bring any counter-claims that they believe proper
> against any creditors asserting claims. The Debtors shall diligently pursue all
> such adversary proceedings. The Debtors shall not contest the claim of City
> National Bank, which claim the Debtors accept in its full amount.

199 B.R. at 704.

The Disclosure Statement made two references to potential claims against South Bay

Bank, as the court set forth:

> In their Disclosure Statement, the Kelleys make two references to potential claims
> against South Bay. In one place they state, "It is possible that the Kelleys may
> have various counter claims against South Bay Bank." At another point they
> state, "Also, as noted above, the proper amount of the debt to South Bay Bank
> may be reduced by . . . counterclaims which the Kelleys may have against South
> Bay Bank."

*Id.*

One month after confirmation of the Plan, the Kelleys filed an objection to South Bay

Bank's claim. The bankruptcy court held that the Kelleys' objection was barred by res judicata.

The Kelleys appealed, arguing that they had specifically reserved the right to bring an objection.

The BAP affirmed the bankruptcy court's ruling, finding that the language in the Plan was a

general reservation of rights and was insufficient to overcome the bar of res judicata. With

respect to the Disclosure Statement, the court held that "[a]lthough this is a clearer expression of

potential causes of action, it does not mention the grounds for these potential claims." *Id.* The

court went on to observe that one reason for the lack of specificity was undoubtedly the fact that

South Bay Bank would not have voted for the Plan confirmation if the Kelleys objected to the

claim.

18

Unlike the more general language in *In re Kelley*, the Disclosure Statement in this case identifies potential claims against PwC.

> [T]he Committee is investigating whether any meritorious claims exist against PwC with respect to the restatement of the Debtors' financial statements and other matters.
>
> \*                         \*                         \*
>
> While the investigation to date supports the assertion of substantial claims against PwC, given the inherent uncertainties in any litigation, no assurance can be given regarding the successful outcome of any litigation which may be initiated against PwC. Litigation of the magnitude which may be initiated against PwC is by its very nature lengthy, difficult, expensive, and, most importantly, uncertain in nature. There can be no assurance given that a recovery against PwC, if any, would be material, or that PwC would have sufficient financial resources to satisfy any such recovery.
>
> Moreover, PwC has filed proofs of Claim against the Debtors in an aggregate amount of more than $1,250,000, asserting Claims for, among other things, the Debtors' alleged obligations regarding payment for services previously rendered by PwC. . . . While the Committee disputes and objects to those Claims in their entirety, it is possible that any affirmative recovery obtained by the Estates against PwC could be offset by the amounts asserted in those proofs of Claim or by counterclaims asserted by PwC in litigation commenced on behalf of the Estates.

(Exhibit 3 attached to *Declaration of Lori Lynn Phillips* in support of *PwC's Motion for Summary Judgment*).

This Disclosure Statement is similar to the one analyzed in *Goldin Associates, LLC v. Donaldson, Lufkin & Jenrette Securities Corp.*, No. 00Civ8688(WHP), 2004 WL 1119652 (S.D. N.Y. May 20, 2004)[4]. There, Plaintiff Goldin Associates, LLC served as Liquidating Trustee in the Chapter 11 bankruptcy proceeding of SMTK Expedite, Inc., a subsidiary of SmarTalk Teleservices, Inc. The bankruptcy petition was filed in January 1999. The Official Committee of Unsecured Creditors filed suit in the United States District Court for the Central District of

---

[4]The Trustee submits this case by way of a Notice of Supplemental Authority.

California against Donaldson, Lufkin & Jenrette Securities Corp., asserting claims for breach of

fiduciary duty and fraud arising out of SmarTalk's acquisition of Worldwide Direct, Inc. in 1998.

The case was later transferred to the Southern District of New York. In 2000, SmarTalk and the

Committee filed a Second Amended Liquidating Chapter 11 Plan and a Disclosure Statement.

The question before the court was the same as in the case at bar, *i.e.* the effect of a general

reservation of rights provision on the claims raised against Donaldson, Lufkin & Jenrette

Securities Corp.

In considering the matter, the court first found that the Chapter 11 Plan failed to include

an express reservation of claims against the Defendants. In fact, the Plan sets forth the same

general reservation clause that is present in this case. The Statement provided, in relevant part:

> By authority of the Transfer Order, on April 14, 2000, the Committee filed on
> behalf of the Estates an Original Complaint (the "DLJ Complaint") in the United
> States District Court for the Central District of California against the following
> entities: DLJSC, DLJ, Global Retail Partners, L.P., DLJ Diversified Partners, L.P.,
> DLJ Diversified Partners-A, L.P., GRP Partners, L.P., Global Retail Partners
> Funding, Inc., DLJ First ESC, L.P., DLJ ESC-II, L.P., Kenneth A. Vilieu, Linda
> Fayne Levison (collectively, the "DLJ Defendants") and Victor Grillo, Jr., Lloyd
> Lapidus, Raymond Wysocki and Victor Grillo, Sr. (collectively the "WWD
> Defendants").
> The DLJ Complaint asserts claims arising out of the relationship between
> [SmarTalk] and the defendants in connection with the WWD transaction . . . .
> The Committee seeks relief on behalf of the Estates against all defendants, jointly
> and severally, for: actual and consequential damages caused by the defendants'
> alleged wrongful acts; damages resulting from violations of California Code
> Section 310, including the return of the value of the shares the defendants
> received at the time the WWD transaction was consummated; punitive damages
> for fraud and other wrongful conduct of the defendants; equitable relief in the
> form of voidable transactions; attorneys' fees as applicable by law; pre- and post-
> judgment interest on damages; costs of court; and all other relief as just.
> (Neier Aff. Ex. 1 at 35-36).

2006 WL 1119652 at *1-2.

The district court concluded that, although the Plan contained only a general reservation of claims provision, "[w]hen read conjunctively with the Disclosure Statement, the Plan clearly expresses SmarTalk's intent to preserve its claims against defendants in this action." *Id.* at 4. The court found that reliance on the *Browning* decision was misplaced because the Disclosure Statement contained a "lengthy and detailed summary of the claims the debtor intend[ed] to preserve." *Id.* at *5.

While this Court is, of course, bound by the holding in *Browning*, there are significant differences between the facts in *Browning* and this case. In *Browning*, <u>neither</u> the Disclosure Statement <u>nor</u> the Plan included anything other than a general reservation of claims. *Browning* clearly holds, as to this case, that a general reservation of claims cannot circumvent the otherwise preclusive *res judicata* effect of a confirmed Plan.

In *Browning*, however, both the Disclosure Statement and the Plan made no reference to the specifically reserved claims. In this case, the Disclosure Statement made expressed, detailed references to potential claims against PwC which were then being investigated by the Committee. The question then becomes whether the holding in *Browning* applies only to cases in which <u>both</u> the Disclosure Statement and Plan are silent as to the reservation or specific claims, or if *Browning* also applies even though the Disclosure Statement makes a specific reservation of the claim, while the actual Plan does not.

This Court concludes that *Browning* does not extend to the facts of this case. While language in *Browning* does state that the confirmed Plan operates as *res judicata* regarding unspecified claims, the court in *Browning* noted that the Disclosure Statement was also silent as to the specific claims. *Id.* at 774, 775. If language in the Disclosure Statement was insufficient

to cure the otherwise general and inoperative language in the Plan, there would have been no reason for the Court to review and refer to the Disclosure Statement.

Moreover, all parties and claimants in the bankruptcy proceeding were served with the Disclosure Statement, which was approved in advance by the bankruptcy court. Thus, prior to voting, all parties and claimants were given notice of the potential claim against PwC. This information was important for the purpose of evaluating the merits of the proposed Plan.

Finally, in only one case found by this Court has the doctrine of *res judicata* been invoked to bar a claim reserved only generally in the Plan, but with some specificity (far less than in this case) in the Disclosure Statement. In *In re Kelley*, described *supra*, the Bank voted in favor of the Kelley's reorganization claim. After the voting, the Kelleys initiated an adversary proceeding against the Bank. Under these circumstances, the court was no doubt correct in finding that the omission of the specific reservation of claims in the Plan was used by the debtors to induce the Bank to vote in favor of the Plan, while saving the assertion of the claim until confirmation had occurred.

There is no such flavor in this case. PwC voted against the Plan. Therefore, any omission of the specifically reserved claims from the Plan, but inclusion in the Disclosure Statement, could not have been of unjustified benefit to the Committee or Debtor.

For all of the above reasons, the Court finds that, although the general reservation of claims is insufficient to preserve claims against PwC, the specific reservation of claims in the Disclosure Statement is sufficient to preserve the claims. Therefore, the claims, having been specifically reserved in the Plan, are not barred by the doctrine of *res judicata*.

## V.

In light of the foregoing, PwC's Motion for Summary Judgment on the Ground of Res Judicata (**Doc. #291**) is **DENIED**.  The Trustee's Motion to Abate Consideration of and Further Proceedings on Defendant PwC's Motion for Summary Judgment on the Issue of Res Judicata (**Doc. #319**) is rendered **MOOT**.  The Trustee's Requests for Suggestion of Remand (**Doc. #353, #431**) and Request for Oral Argument (**Doc. #443**) are rendered **MOOT**.

**IT IS SO ORDERED.**

5-21-2007
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**