IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE SMARTALK TELESERVICES, INC.
SECURITIES LITIGATION

This document relates to:
USDC Northern District of Texas Case
No. 3:00-CV-2671-M (Liquidating Trustee)

Case No. 00-MD-1315
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER #2

This matter is before the Court for consideration of the Motion of Defendant PricewaterhouseCoopers, LLP for Summary Judgment on the Plaintiff Liquidating Trustee's Claims for Breach of Contract and Breach of Fiduciary Duty and Claims based on Non-Audit Related Services (Doc. #294). For the reasons that follow, the motion is granted in part and denied in part[1].

### I.

PwC seeks summary judgment on the Liquidating Trustee's claims for breach of contract (fourth and fifth causes of action), on the basis that these claims merely restate the professional negligence claims asserted against PwC. In its Memorandum *contra*, the Trustee states that it does not oppose dismissal of the breach of contract claims contained in Counts Four and Five on this basis. The Trustee does, however, oppose PwC's motion for summary judgment on the breach of fiduciary duty claim and the claims based on Non-Audit Related Services. The Court

---

[1] The pertinent background facts to this case are set forth in *Opinion and Order #1*. In this, and subsequent opinions, the Court will discuss only those facts relevant to consideration of the pending motions for summary judgment.

considers separately the merits of PwC's motion as to these claims.

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

2

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III.

**A. Claim for Breach of Fiduciary Duty.**

The Plaintiff Liquidating Trustee alleges the following in Count Six:

> SmarTalk engaged PwC as its financial consultant and auditor for purposes of advising SmarTalk on its accounting treatment of significant events, in particular the various acquisitions SmarTalk made in 1997. As the financial consultant and agent of SmarTalk, PwC assumed the responsibility of advising SmarTalk on all material aspects of the events to ensure that the accounting treatment was in accordance with GAAP. In assuming this responsibility, PwC had a duty to provide to SmarTalk its professional expertise.

(Pl. Complaint ¶ 96). Plaintiff claims that SmarTalk placed "trust and confidence" in PwC to advise it regarding accounting duties. As a result, Plaintiff claims that PwC had a duty "to act with the utmost good faith and loyalty and for the benefit of SmarTalk. As such, PwC acted at

all relevant times as SmarTalk's agent." (*Id.* at ¶ 97).

The Plaintiff Liquidating Trustee alleges that PwC breached this fiduciary duty by: (1) failing to investigate and advise SmarTalk of the proper accounting treatments, in accordance with GAAP, to be applied to events associated with its 1997 acquisitions; (2) improperly valuing ConQuest's intangible assets; (3) failing to conduct its audit of SmarTalk's 1997 financial statement in accordance with GAAS; (4) failing to timely notify SmarTalk that PwC had not performed its audit of SmarTalk's 1997 financial statements in accordance with GAAS; (5) failing to timely perform a restatement of SmarTalk's 1997 and first quarter 1998 financial statements; and (6) failing to staff the 1997 and other SmarTalk engagements with sufficiently knowledgeable personnel. (*Id.* at ¶ 98).

In moving for summary judgment, PwC maintains that it was not SmarTalk's fiduciary. According to PwC, an accountant acting as an auditor owes no fiduciary duty to the client, given the accountant's inherent duty of independence and impartiality. PwC contends that the Liquidating Trustee is attempting to convert its claim for professional negligence into a claim for breach of fiduciary duty.

In response, the Liquidating Trustee asserts that PwC did not act "independently" during the audit so as to preclude liability as a fiduciary. In particular, the Liquidating Trustee argues that SmarTalk treated PwC as a partner in the growth and success of its business. The Plaintiff contends that, in turn, SmarTalk came to rely on PwC's advice and judgment with respect to the determination, filing and release of financial statements and other accounting-related matters. PwC assisted SmarTalk with its IPO and the preparation of its S-1. The Liquidating Trustee argues that, from that point on, SmarTalk looked to PwC for advice on revenue recognition

4

issues. PwC reviewed each of SmarTalk's earnings releases and prepared the company's 1995 and 1996 federal and state tax returns. SmarTalk also relied on PwC for due diligence work on the 1997 acquisitions, including advice pertaining to the accounting issues of acquired deferred revenue and breakage[2]. Based on these circumstances, the Plaintiff maintains that there is at least a genuine issue of fact as to whether PwC's role went beyond that of independent auditor.

In reply, PwC points out that, in public statements to shareholders, the SEC and acquisition targets, SmarTalk identified PwC as an independent auditor and accountant. PwC asserts that the facts on which Plaintiff relies simply show that PwC and SmarTalk had extensive, regular contact between 1995 and 1999. According to PwC, this is normal for an accountant performing work for a public company. PwC argues that the evidence does not show that it controlled SmarTalk's assets or acquisitions or that there was any mutual understanding between the two entities of a fiduciary relationship.

As both parties accurately observe, in general, an accountant does not owe a fiduciary duty to its client when performing the services of an auditor. *See e.g., Resolution Trust Corp. v. KPMG Peat Marwick*, 844 F.Supp. 431, 436 (N.D. Ill. 1994). "The duty of a traditional fiduciary is to act 'in a representative capacity for another in dealing with the property of the other,' whereas an auditor acts 'independently, objectively and impartially, and with the skills which it represented to its clients that it possessed.'" *Id.*, quoting *Franklin Supply Co. v. Tolman*, 454 F.2d 1059, 1065 (9th Cir.1971). The court in *Resolution Trust Corp.* recognized that "[p]erhaps in some instances the function of an independent auditor could overlap into areas in which it

---

[2] The Liquidating Trustee's accounting expert, Andy Mintzer, opines that PwC has violated the standard of independence set forth in GAAS and SEC Rule 2-01 of Regulation S-X pertaining to the qualifications of accountants.

would hold a fiduciary duty to its client." *Id.* The Plaintiff Liquidating Trustee argues that, in this case, the above described facts at least create a genuine issue in this regard.

The Court concludes that there is at least a genuine issue of material fact as to whether PwC's role went outside the normal role of independent auditor so as to give rise to a fiduciary relationship with SmarTalk. The evidence adduced shows that PwC acted on a variety of matters for SmarTalk beyond mere auditing of financial records. Whether this interaction rises to such a level that PwC could be considered a fiduciary, is a question of fact to be determined by a jury. Thus, PwC's motion for summary judgment on the fiduciary duty claim is denied.

### B. Claims Based on Non-Audit Related Services.

PwC also moves for summary judgment on the Plaintiff Liquidating Trustee's claims based on acquisition accounting and valuation services. Plaintiff claims that PwC gave advice on acquisition accounting issues related to SmarTalk's 1997 acquisitions and that SmarTalk relied on this advice to determine acquisition purchase prices, to make required filings with the SEC regarding acquisitions, and to value in-process research and development ["IPR&D"] assets acquired from ConQuest for purposes of amoritizing the purchase price. PwC argues that because Plaintiff has failed to provide any expert opinion with respect to its claim, summary judgment is warranted. In particular, PwC asserts that Plaintiff's expert accounting and auditing witness, Andy Mintzer, does not identify any conduct on the part of PwC that would violate a professional duty of care with respect to the acquisition-related services or IPR&D valuation. In addition, PwC claims that Plaintiff fails to articulate any damages as a result of PwC's alleged misconduct with respect to acquisition valuations and IPR&D valuations.

6

In response, the Plaintiff Liquidating Trustee takes issue with PwC's characterization of Mr. Mintzer's expert opinions. According to Plaintiff, Mr. Mintzer "addresses the issue of PwC's consulting advice and how that advice violated professional standards." (*Memorandum contra* at 15). For example, Plaintiff cites to the following portions of Mintzer's opinion:

> In addition to performing the audit of SmarTalk for 1997, PwC also consulted with SMTK with regard to the selection and implementation of the accounting principles and practices at issue in this matter. (Mintzer Op. Exhibit 4497 at 7, ¶ 17).
>
> There are other professional standards that affect the performance of the services provided by PwC in this matter. Generally accepted accounting principles ("GAAP") is a technical term that describes the practices, policies and procedures necessary to define accepted accounting practice at a particular time. (*Id.* at ¶ 18).
>
> Additionally, the AICPA Code of Professional Conduct, Article V prescribes: A [CPA] should observe the profession's technical and ethical standards, strive continually to improve competence and the quality of services, and discharge professional responsibility to the best of the CPA's ability. (*Id.* at 9, ¶ 21).
>
> The quest for excellence is the essence of due care. Due care requires a CPA to discharge professional responsibilities with competence and diligence. It imposes the obligation to perform professional services to the best of his or her ability with concern for the best interest of those for whom the services are performed and consistent with the profession's responsibility to the public. (*Id.* at ¶ 24).
>
> As professionals, CPAs perform an essential role in society. In carrying out their responsibilities as professionals, CPAs should exercise sensitive professional and moral judgments in all their activities. (Code of Professional Conduct ET § 52). Those who rely on CPAs (including their clients, investors and the financial community) expect them to discharge their responsibilities with integrity, objectivity, due professional care, and a genuine interest in serving the public. (Code of Professional Conduct ET § 53). Professional standards require all CPAs to perform all professional responsibilities with the highest sense of integrity. Integrity is measured in terms of what is right and just. In the absence of specific rules, standards or guidance, or in the face of conflicting opinions, a CPA should test decisions and deeds by asking: "Am I doing what a person of integrity would do?" Integrity requires a CPA to observe both the form and spirit of technical and ethical standards; circumvention of those standards constitutes subordination of judgment. Integrity also requires a CPA to observe the principles of objectivity

and independence and of due care. (Code of Professional Conduct ET § 54). (*Id.* at 11, ¶ 31).

PwC provided accounting guidance to SMTK during the course of the 1997 acquisitions and financial statement preparation process that was in violation of GAAP. (*Id.* at 15, ¶ 47(C)).

PwC violated professional standards by advising SMTK management that the accounting for certain transactions was in accordance with GAAP when, in fact, it was not in accordance with GAAP . . . the following are examples: Application of the purchase method of accounting - Deferred Revenue. (*Id.* at 17, ¶ 53).

There is no possible legitimate reason for relying on the so-called "SEC stance" that "no breakage could be taken until the date of expiration" because that stance related to how SMTK accounted for the cards it sold, not the liability to service cards it acquired through business combinations. (Emphasis in original). Relying on SMTK's policy for cards it sells for guidance on the policy to apply to service obligations it acquires is like comparing apples to oranges. It is well beyond any reasonable measure of accounting standards that such a correlating could be made. Phil Hirsch, the engagement partner, felt that "it just was odd that you could recognize the revenue. But my sense at the time was you had to recognize it." (*Id.* at 20, ¶ 64).

PwC had the responsibility to determine whether the accounting principles applied by SMTK were appropriate and properly applied. The application of accounting principles must be reasonable not "just odd." (*Id.* at ¶ 65).

PwC was wrong in concluding that the deferred revenue balances of the acquired business were properly stated and again were wrong in concluding that the breakage of the acquired cards resulted in revenue to SMTK. These errors were not caused by poor judgment but by the failure to evaluate SMTK's accounting in accordance with basic and fundamental GAAP. (*Id.* at ¶ 66). [Emphasis in original]

Despite the foregoing, PwC argues that Mintzer fails to opine on "instances of accounting advice that are separate from the opinion PwC rendered on the 1997 financial statements themselves . . . ." (*Reply Memorandum* at 8). Further, PwC notes that Mintzer does not offer any opinion on the issue of PwC's valuation of IPR&D assets acquired from ConQuest. With respect to this latter issue, the Court agrees that Plaintiff fails to advance any facts that would create a

genuine issue on the claim. PwC's motion related to the IPR&D valuation services is meritorious.

As to the claim regarding acquisition accounting advice given by PwC, the Court finds that Mr. Mintzer's opinion is sufficient to at least create a genuine issue of material fact on the Plaintiff Liquidating Trustee's claim that PwC failed to observe professional standards in connection with its acquisition accounting advice. PwC argues that, even if a genuine issue exists in this regard, it is nevertheless entitled to summary judgment because Plaintiff allegedly fails to provide evidence as to damages. According to PwC, Plaintiff's damages expert, Mr. Henry Owsley, provides an estimate of damages flowing from SmarTalk's restatement of the 1997 financials. Owsley does not, however, provide a separate estimate of damages related to PwC's alleged breach of duty regarding the acquisition accounting advice.

The Plaintiff Liquidating Trustee argues that a separate estimate of damages related to PwC's acquisition accounting advice is not necessary. According to Plaintiff, the allegations of professional misconduct by PwC span a period of over a year, culminating in the decision to restate the SmarTalk 1997 financials. In addition, Plaintiff contends that Mr. Owsley expressly considered and included the harm resulting from PwC's acquisition advice in calculating his damage estimate. Plaintiff cites to the following portions of Owsley's report:

> Properly accounting for acquisitions is an important part of investor understanding of companies in "roll-up" mode. PwC's purportedly correct accounting treatment enabled SmarTalk to improve reported 1998 EPS (earnings per share) through the use of one-time write-offs and accounting reserves, as well as policies relating to the recognition of deferred revenue and breakage revenue. (Ex. 4515 at 4).

> Ultimately, the restatement - precipitated by the incorrect accounting advice that PwC rendered to the Company - left SmarTalk with limited options regarding access to capital markets and credit facilities, which resulted in lost future profits,

9

unrealized capital investments and lost consideration due to the distressed nature of the sale that was consummated. (*Id.* at 6).

When PwC's advice turned out to be incorrect, it served to diminish the perceived benefits of the 1997 acquisitions . . . and the price of the Company's public equity declined. (*Id.*).

The Court finds that Plaintiff has come forward with evidence sufficient to establish a genuine issue of material fact as to whether damages resulted from PwC's alleged breach of duty in connection with acquisition accounting services. In the Court's view, the claim is inextricably tied to the allegations regarding the restatement of the 1997 financials. The Court agrees with Plaintiff that the trier of fact will consider evidence related to the entire chronology of events in this regard. Thus, the fact that Mr. Owsley's damage evaluation does not employ a separate damage estimate for the acquisition accounting services provided by PwC is not fatal to the Plaintiff's claim. PwC's motion for summary judgment on the issue of acquisition accounting services is denied.

## IV.

PwC's Motion for Summary Judgment on the Plaintiff Liquidating Trustee's Claims for Breach of Contract and Breach of Fiduciary Duty and Claims based on Non-Audit Related Services (**Doc. #294**) is **GRANTED in part and DENIED in part**, consistent with the foregoing.

**IT IS SO ORDERED.**

5-22-2007
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**