IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE SMARTALK TELESERVICES, INC.,
SECURITIES LITIGATION

This document relates to:
USDC Northern District of Texas Case
No. 3:00-CV-2671-M (Liquidating Trustee)

Case No. 2:00-MD-1315
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

### OPINION AND ORDER #3

This matter is before the Court for consideration of the Motion of Defendant PricewaterhouseCoopers, LLP for Partial Summary Judgment against Claims for Damages based on Non-Bond Liabilities. (Doc. #293). For the reasons that follow, the motion is granted.

### I.

PwC moves for summary judgment as to one theory of damages advanced by the Plaintiff Liquidating Trustee. Both parties agree that a proper measure of damages on Plaintiff's claims against PwC is the alleged diminution in value of SmarTalk caused by the alleged tortious conduct of PwC. PwC asserts that, in addition to this theory, Plaintiff seeks to recover damages for claims of creditors of SmarTalk. Plaintiff argues that PwC mischaracterizes its damages theory. The Court outlines the parties' arguments in greater detail below.

### II.

The procedure for considering whether summary judgment is appropriate, is found in Fed.

R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce

2

more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III.

In its motion for partial summary judgment, PwC argues that Plaintiff seeks to recover damages for "non-bond" or "operating" liabilities which arise from the claims of creditors of SmarTalk. According to PwC, the Plaintiff lacks standing to sue for injury to creditors because Plaintiff has standing to pursue only claims that constitute property of the SmarTalk estate. 11 U.S.C. § 541(a)(1). PwC relies on the Sixth Circuit's decision in *Melamed v. Lake County National Bank*, 727 F.2d 1399 (6th Cir. 1984) in support of its position.

There, the Plaintiff trustee of a bankrupt company, Terminal Equipment, Inc., sought recovery from a bank for an alleged fraudulent transfer of assets of the debtor company and for alleged tortious interference with business relationships of the debtor compnay. A jury awarded damages on these claims. On appeal, the bank argued, *inter alia*, that the court erred in allowing the jury to consider claims by the bankrupt's creditors in setting the amount of damages. The Sixth Circuit held that consideration of creditors' claims was improper because the trustee had no standing to pursue damages for such claims. The court stated that the trustee "stands in the shoes

3

of the bankrupt, not of its creditors. Furthermore, the amount of creditors' claims is totally unrelated to the determinative fact in setting damages- the difference in the value of the business of [the bankrupt company] before and after the alleged tortious interference of the Bank." 727 F.2d at 1404.

PwC argues that, in addition to the Plaintiff Trustee pursuing damages for the diminution in value of SmarTalk as an alleged result of PwC's actions, the Trustee seeks to recover "unspecified and unquantified creditor claims labeled 'non-bond liabilities'. . . ." (*Motion for Partial Summary Judgment* at 6). According to PwC, this theory of recovery first appeared in the rebuttal report of Plaintiff's expert, Henry Owsley. The report states:

> **Non-Bond Liabilities**
> In order to obtain a complete picture of damages associated with the actions of PwC, I believe it is necessary to also account for other non-bond liabilities at the time of sale.
> In developing my "but for" valuation, like Mr. Cornell, I valued the Company as a going concern. Implied by this valuation technique is the assumption that the Company's operating liabilities, including the trade creditors, would be satisfied in the ordinary course of business at face value. However, the AT&T sale was an asset sale consummated in bankruptcy. As such, the responsibility for satisfying these claims was left to SmarTalk's bankruptcy estate and any recoveries experienced by the estate were, or will be, diminished to the extent they were used to satisfy these claims.
> Given that the claims process is ongoing, as I noted in my initial report, it is my view that if the Liquidating Trustee establishes at trial the amount of such claims, they should logically be added to my damage estimate derived above.

(Exhibit 79 at 7-8).

On deposition, Mr. Owsley testified that he was asked to assess the "additional non bond liability issue with respect to creditors . . . ." (*Owsley Depo.*, Exhibit 26 at 63). Owsley stated that his opinion was based on "theory" because he had "not been given any numbers to actually - - this is the amount of creditors and this what they ultimately received. So I have not done that

4

specific work." (*Id.*). Owsley added that the "non bond liabilities" are "something else on top of" the enterprise value of the company before and after PwC's alleged actions. (*Id.* at 64).

Based on the foregoing, PwC argues that the Plaintiff has no standing to pursue damages that include "non-bond liabilities." In response, the Trustee contends that PwC mischaracterizes the nature of non-bond liabilities. According to the Trustee, it is not attempting to pursue the independent claims of creditors; rather, the non-bond liabilities relate to a determination of the market value of SmarTalk. The Trustee asserts that "the full amount of the loss [allegedly caused by PwC] can only be determined by including, in determining the market value of SmarTalk, those liabilities which SmarTalk now owes which it otherwise would not have owed had PwC's actions not caused its collapse." (*Memorandum contra* at 7). The Trustee contends that this loss directly impacts the market value calculation because "either: (1) the company would not owe those debts in the first place had they been satisfied in the ordinary course; or (2) AT&T would have assumed those liabilities as well as purchasing the assets in a true going concern sale, thereby reducing the compensation SmarTalk received on the sale of its assets." (*Id.*). In a subsequent affidavit, Mr. Owsley explains that it is his belief that the Trustee should "establish the appropriate amount of non-bond liabilities to consider as damages. One estimate for such additional damages would be the sum of (i) operating liabilities as of August 10, 1998 and (ii) the later-arising bankruptcy-related claims of the estate." (Exhibit 4 to *Owsley Affidavit*). Owsley further opines:

> SmarTalk has been harmed not only through a loss in recoveries to financial debt and to equity, but also as a result of SmarTalk's bankruptcy estate having to satisfy the trade liabilities not assumed in the sale. Based on the foregoing, it is my belief that the total damages in this case must include the non-bond liabilities.

(*Id.*). The Trustee notes that PwC's expert disagrees with Owsley's opinion. In view of the disagreement, the Trustee asserts that the matter should not be resolved on summary judgment.

In reply, PwC disputes the Trustee's characterization that Owsley used non-bond liabilities to calculate SmarTalk's value. According to PwC, Owsley clearly treats non-bond liabilities as an additional element of damages. In addition, PwC notes that the evidence the Trustee relies on in support of its non-bond liabilities theory is the claims register from the SmarTalk bankruptcy proceeding, *i.e.*, the list of creditors' claims against the estate, as well as a list of creditors' claims that had been approved in the bankruptcy case. According to PwC, this underscores the legal invalidity of the Trustee's damages theory.

The Court finds that PwC's motion for partial summary judgment on the issue of non-bond liabilities damages is meritorious to the extent the Trustee seeks to recover such liabilities as a measure of damages. The law is clear that the appropriate measure of damages on the Trustee's alleged claim is the diminution in value of SmarTalk before and after PwC's actions. While the parties do not dispute this standard, the Trustee contends that non-bond liabilities should be taken into account in determining the value of SmarTalk. As PwC points out, Mr. Owsley clearly characterizes the non-bond liabilities as a separate, additional amount of damages. The Court concludes that, as a separate element of damages, non-bond liabilities cannot be recovered. To the extent, however, that the non-bond liabilities are taken into account in determining the value of SmarTalk before and after PwC's actions, the issue is appropriate for consideration.

In sum, to the extent the Trustee seeks to recover non-bond liabilities as a measure of damages, PwC's motion is granted.

IV.

The Motion of Defendant PricewaterhouseCoopers, LLP for Partial Summary Judgment against Claims for Damages based on Non-Bond Liabilities (**Doc. #293**) is **GRANTED**.

**IT IS SO ORDERED.**

5-21-2007
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE