IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE SMARTALK TELESERVICES, INC.,
SECURITIES LITIGATION

**This document relates to:**
USDC Northern District of Texas Case
No. 3:00-CV-2671-M (Liquidating Trustee)

Case No. 2:00-MD-1315
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER #4

This matter is before the Court for consideration of the Motion of Defendant PricewaterhouseCoopers, LLP for Summary Judgment on the Ground of Speculative Damages. (Doc. #292). For the reasons that follow, the motion is denied.

### I.

PwC seeks summary judgment on the Plaintiff Trustee's theory of damages on the basis that it is allegedly too speculative to support recovery. PwC takes issue with the opinion of Plaintiff's expert, Henry Owsley, and challenges his methodology in calculating damages. PwC also contends that the Trustee has failed to come forward with evidence to prove its damages to a reasonable degree of certainty. The Court addresses PwC's arguments in greater detail, below.

### II.

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); see also, *Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.*

2

It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III.

As this Court stated in an earlier *Opinion and Order*, Plaintiff's measure of damages is based on the value of SmarTalk measured from August 10, 1998, before it announced problems with its financial statements, to early 1999, when the SmarTalk bankruptcy estate sold its assets to AT&T. With respect to the issue of proving damages to a reasonable degree of certainty, PwC contends that the evidence fails for several reasons. Before discussing PwC's contentions, the Court observes that proof of damages must be shown with a reasonable degree of certainty; speculative damages are not recoverable. *See e.g., Bobb Forest Products, Inc. v. Morbark*, 151 Ohio App.3d 63 (Ohio App. 2002). "This rule serves to preclude recovery, however, only where the fact of damage is uncertain, *i.e.,* where the damage claimed is not the certain result of the wrong, not where the amount of damage alone is uncertain." *Grantham and Mann, Inc. v. American Safety Products, Inc.*, 831 F.2d 596, 601-02 (6th Cir. 1987).

**1. Reliance on Stock Prices.**

PwC first asserts that the Trustee cannot prove damages to a reasonable degree of

certainty because Owsley's opinion on damages depends on stock market prices which allegedly contain misinformation. According to PwC, the securities markets were "misinformed" as to certain material facts concerning SmarTalk, in particular: (1) problems in SmarTalk's cellular division; (2) SmarTalk's third quarter financial results; and (3) public statements made by SmarTalk management on October 23, 1998 concerning its cash-flow position.

With respect to the cellular division, PwC claims that there was substantial damage to SmarTalk because of the merger with WorldWide Direct ["WWD"] in June 1998[1]. According to PwC, Owsley acknowledged on deposition that he had seen no evidence that the market was aware of these issues prior to August 10, 1998. PwC contends that Owsley failed to account for these issues in assessing the value of SmarTalk before August 10, 1998, rendering his methodology unreliable. The Trustee responds that Owsley did not fail to account for issues surrounding WWD, but rather made a judgment about the impact of the issues in his valuation process. Owsley opines that the damage associated with the WWD acquisition was not a material component of prevailing stock prices so as to affect the value analysis. (*Owsley Affidavit* at ¶ 25, November Report at 26).

With respect to SmarTalk's third quarter financial results[2], PwC argues that Owsley's methodology is defective, because he was uncertain of the date on which the third quarter financial results were originally published. The Trustee claims that Owsley's failure to consider

---

[1]In particular, PwC points to allegations that WWD prepaid cellular phones had a faulty technology. SmarTalk's financial projections allegedly suffered as a result.

[2]In January 1999, SmarTalk announced that it would restate its third quarter 1998 financials because they were materially inaccurate. There is no claim that PwC bears responsibility for this restatement.

4

the effect of the restatement does not make his methodology unreliable, because the restatement had no material effect on SmarTalk's value in August 1998.

With respect to the public statements made by SmarTalk management on October 23, 1998 that SmarTalk would show a positive cash-flow in the fourth quarter of 1998, Owsley testified that he could find no basis for such a statement given SmarTalk's financial condition. PwC contends that the public statements in October 1998 likely caused the market to be misinformed. PwC further argues that this misinformation affects the reliability of Owsley's methodology.

The Court finds that the foregoing instances of alleged misinformation in the market do not lead to the conclusion that Trustee has failed to prove damages to a reasonable degree of certainty. While PwC takes issue with Owsley's conclusions, there is no evidence to suggest that Owsley failed to consider the alleged misinformation in the market in forming his opinion. Rather, Owsley made judgments about the impact of the non-public market information in his valuation analysis[3]. In the Court's view, Owsley's methodology does not render Plaintiff's damages theory deficient as a matter of law. Simply put, the issues raised by PwC may be credited by the ultimate trier of fact; the matters asserted, however, are questions concerning the weight of the testimony, not its admissibility.

### 2. Projections of Future Earnings.

PwC also claims that the Trustee's damages theory is deficient because Owsley relied on

---

[3]The reliability of expert testimony is an issue that goes to the weight of the evidence rather than its admissibility. *State v. Pierce*, 64 Ohio St.3d 490, 501 (1992).

forecasts of SmarTalk's 1999 earnings prepared by securities analysts and published on November 19, 1998. PwC contends that Owsley should have adjusted the analysts' forecasts in view of the misinformation present in the stock market at the time. PwC further argues that it was improper for Owsley to rely on the forecasts, because the analysts had alleged conflicts of interest with SmarTalk, due to investment banking relationships, which resulted in their forecasts having an upward future earnings bias.

In response, the Trustee asserts that Owsley did not blindly accept the analysts' reports in forming his opinion. Owsley testified that he believed the analysts' estimates utilized the best available contemporaneous information concerning the value of SmarTalk. According to Owsley, however, he tested the estimates through his own analysis. (*Owsley Depo.* at 71-73, 86-90). Again, although PwC takes issue with the judgments made by Owsley in his evaluation and analysis, and the ultimate trier of fact may reach the same view, this does not lead to the conclusion that PwC is entitled to summary judgment on this issue.

### 3. Financing Theory.

PwC contends that the Trustee's damages theory cannot survive summary judgment because Owsley's opinion as to SmarTalk's ability to obtain additional financing in the fall of 1998 is speculative. Owsley testified on deposition that, assuming SmarTalk did not need to restate its financial statements, it nevertheless would have needed to obtain additional financing in the fall of 1998 to continue operating. According to Owsley, financing would have come from alternate sources charging a high rate of interest. PwC takes issue with this testimony because it allegedly differs from his February 2002 report in which Owsley opined:

> We have examined various telecommunications companies that were able to raise money in the capital markets in 1998, despite generating significant operating losses. We believe that SmarTalk should also have reasonably expected to raise additional monies in the form of additional debt or equity offerings during fiscal 1998 had it not been for the restatement process necessitated by PwC's errors. . . .

(Exhibit 78 at 8). PwC argues that, in his May 2002 report, Owsley opines that SmarTalk could have obtained secured bank financing[4]. According to PwC, Owsley's changes in opinion as to SmarTalk's ability to obtain financing renders Owsley's opinion speculative.

The Trustee responds that any change in Owsley's initial theory was prompted by receipt of discovery, in particular the deposition testimony of Erich Spangenberg, regarding SmarTalk's financing efforts. (*Owsley Affidavit* at ¶ 36). The Trustee also takes issue with PwC's characterization of Owsley's May 2002 report. According to the Trustee, Owsley's opinion that SmarTalk could have obtained secured financing did not refer to bank financing but rather financing from a hedge fund or distressed investor. The Trustee maintains that Owsley's opinion as to SmarTalk's ability to obtain financing is not speculative.

In the Court's view, Owsley's opinions as to SmarTalk's ability to obtain financing are not speculative. Again, PwC takes issue with the analysis and judgments made by Owsley, but this criticism does not mean that Owsley's theory is without an evidentiary basis. While the ultimate trier of fact will be required to weigh conflicting testimony, the fact that PwC disagrees with Owsley's theory is not a basis for summary judgment.

---

[4] The Court notes that Owsley does not specifically refer to "secured bank financing" in his May 2002 report.

### 4. Other Contributing Factors.

PwC contends that the Trustee's damages claim is speculative because it fails to account for various other factors that allegedly contributed to SmarTalk's failure. On deposition, PwC questioned Owsley as to these other factors. Owsley identified several, including: declining prices and margins; the WWD acquisition; management distraction; operational/integration issues associated with SmarTalk's strategy for acquiring and integrating companies with different systems; and SmarTalk's competition with primary vendors. (*Owsley Depo.* at 140-41, 145-47). PwC contends that the Trustee's failure to account for these factors and instead rely on PwC's actions as the source of SmarTalk's demise, renders the damages claim speculative.

In response, the Trustee asserts that PwC ignores that all of these factors were allegedly exacerbated by the restatement of financials. The Trustee further notes that Owsley did consider these other factors in forming his opinion. As to the issue of declining prices and margins, Owsley examined the gross margins of SmarTalk and several other telecommunications companies for the period of late 1997 to early 1999. (Exhibit 79 at 14). With respect to the WWD acquisition, Owsley opined that the problems associated with the event were not material to SmarTalk's overall enterprise value. (*Owsley Depo.* at 104-06). As to the issue of management distraction, Owsley stated on deposition that a contributing factor was the restatement process. (*Id.* at 149). With regard to integration issues, Owsley opined that SmarTalk's issues were typical of a company confronting such operational changes. (*Id.* at 264-66). As to the issue of competition in the industry, the Trustee maintains that, absent PwC's actions, SmarTalk would have had an opportunity to execute its business plan and build value in the company.

Contrary to PwC's assertions, there is evidence that Owsley considered various other factors that allegedly may have contributed to SmarTalk's demise. In the Court's view, the degree to which various other factors influenced the injury claimed by the Trustee is a matter for the trier of fact to consider.

### 5. Additional Issues.

PwC argues that the Trustee's damages claim is speculative for additional reasons. First, PwC contends that SmarTalk's failure to realize a profit from the second quarter of 1997 to the third quarter of 1998 creates a heavy burden for the Trustee to show that SmarTalk lost profits as a result of PwC's actions. Second, PwC argues that because SmarTalk's cellular division was a new business, the Trustee has not provided a basis on which to establish damages. In support of its position, PwC cites *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722 (10th Cir. 1993). There, the Plaintiff corporation brought a claim of civil conspiracy, alleging damages in the form of lost profits. In assessing the measure of damages, the court distinguished lost profits claimed by established businesses as compared to lost profits claimed by unestablished businesses. The court observed that some courts apply the "new business rule," which bars as a matter of law claims for lost profits by unestablished businesses. The court concluded, however, that it did not need to decide whether to apply such a rule because the Plaintiff failed to show damages to a reasonable degree of certainty. In particular, the Plaintiff corporation "fail[ed] to produce a witness [at trial] capable of offering an opinion as to projected future sales. . . . Absent evidence showing the basis of their projected sales, the Plaintiffs have failed to meet their burden of proof in showing damages." *Id.* at 734.

9

In the Court's view, the instant action is in a very different posture than the *TK-7 Corp.* case. The Trustee has offered an opinion on damages that is based on SmarTalk's enterprise value before and after PwC's alleged actions. The Trustee does not make a simple lost profits damages claim as was the case in *TK-7 Corp.* Further, Trustee in this case argues that PwC has mischaracterized its damages claim.

According to the Trustee, while Owsley relied in part on projections of SmarTalk's anticipated earnings in calculating SmarTalk's equity value, the projections were one of several methods used to determine SmarTalk's enterprise value in view of PwC's alleged actions. The Trustee also maintains that Owsley did not simply calculate lost profits as a measure of damages. (*Owsley Affidavit* at ¶ 12). The Trustee also notes Owsley's opinion that it was PwC's conduct that allegedly prevented SmarTalk from executing a business plan that could have produced profits. (*Owsley Depo.* at 34). According to the Trustee, part of the reason why SmarTalk's future profits are not certain is due to PwC's conduct.

The Court concludes that summary judgment on the issue of damages is not appropriate. The Trustee has come forward with sufficient evidence to show that there are at least genuine issues of material fact as to the measure of damages allegedly caused by PwC's actions. PwC's challenge to Owsley's opinion on the issue of the extent of damages attributable to PwC's actions is a matter properly left for consideration at a trial on the merits.

## IV.

In light of the foregoing, the Motion of Defendant PricewaterhouseCoopers, LLP for Summary Judgment on the Ground of Speculative Damages (**Doc. #292**) is **DENIED.**

**IT IS SO ORDERED.**

5-21-2007
**DATE**

                                      **EDMUND A. SARGUS, JR.**
                                      **UNITED STATES DISTRICT JUDGE**